IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

STACY PLUMLEE,

        Plaintiff,

v.

CORPORAL MARK THOMAS, et al.

        Defendants.

Civil Action No. 16-902-RGA

MEMORANDUM OPINION

Patrick C. Gallagher, JACOBS & CRUMPLAR, P.A., Wilmington, DE, Attorney for Plaintiff.

Carla A. K. Jarosz, DEPUTY ATTORNEY GENERAL, Wilmington, DE, Attorney for Defendants.

August 10, 2020

/s/ Richard G. Andrews
**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before me is Defendants' Motion for Summary Judgment. (D.I. 79). I have reviewed the parties' briefing. (D.I. 80, 87, 89). For the following reasons, I will grant Defendants' motion.

### I. BACKGROUND

Plaintiff was arrested and handcuffed on September 13, 2014, when police were called to her home during a domestic violence incident with her then-husband. (D.I. 81, at 236, ¶ 18).[1] Prior to the argument, Plaintiff had taken Ambien and Klonopin, sleep medications, and consumed some amount of alcohol. (*Id.* at 71, 72; D.I. 87 at 3, 4).

During Plaintiff's arrest, Defendant Thomas first handcuffed Plaintiff's left hand. (D.I. 81 at 283). Plaintiff did not resist during her arrest. (*Id.* at 284). Plaintiff alleges that Cpl. Thomas, the arresting officer, injured Plaintiff's shoulder when he bent Plaintiff's right arm behind her back to handcuff her. (*Id.* at 238, ¶ 20). In her complaint, she described that her right shoulder popped, causing her to say, "Ouch." (*Id.*). At her deposition, Plaintiff described the handcuffing as follows:

> I remember him telling me to raise my hands a certain way and I had done all that and he let me put my one hand behind my back on my own. When it came to my right one he grabbed and assisted on his own. He grabbed it a little hard. I don't know if he did it on purpose or not, I don't know, but I know when he grabbed it and he pulled it there was a loud pop and I told him it hurt.

(*Id.* at 73). Defendant testified that he handcuffed Plaintiff in accordance with policy. (*Id.* at 283). Audio and video footage recorded from the back of Defendant Thomas' police vehicle shows Plaintiff with no obvious signs of discomfort or physical distress. (D.I. 83).

---

[1] Defendants' Appendix is at D.I. 81. It is consecutively paginated. Reference to the pagination in the Appendix is only to the number in the header. Plaintiff's Complaint is part of the Appendix, at 235.

2

Plaintiff was taken to Baylor Women's Correctional Institution ("BWCI"), where she underwent medical intake. (D.I. 81 at 238-40, ¶¶ 25, 27-32). The Complaint states that Plaintiff "indicated she had heard her right shoulder 'pop' when she was arrested," and "further indicated her shoulder hurt badly." (*Id.* at 239, ¶ 29). There is no mention of Plaintiff's shoulder in the notes of her medical intake nor any of the medical records from her incarceration. (*Id.* at 109-55). On the medical intake form under the question, "Upon receipt, the prisoner reported/complained of the following injury/medical problem(s)," the response reads "will discuss." (*Id.* at 112). There are several requests from Plaintiff seeking medical attention for constipation and anxiety. (*Id.* at 132-33).

After Plaintiff was released from BWCI nine days later, she went to Milford Memorial Hospital. (*Id.* at 245, ¶ 56). The Radiologist Report from that date – September 22, 2014 – found "no evidence of an acute fracture, dislocation or focally destructive process of bone," and no significant radiographic or soft tissue abnormality in Plaintiff's right shoulder in general. (*Id.* at 202).

About two weeks later, Dr. Andrew Robinson treated Plaintiff. (*Id.* at 206). Dr. Robinson ordered an MRI, which was performed the next day – October 9, 2014. (*Id.*). Dr. Robinson concluded that Plaintiff had:

> Probable anterior right shoulder subluxation with glenoid labral tear, chondral surface injury to humeral head and/or inferior glenoid; secondary AC joint athralgia, impingement syndrome, possible calcific tendinitis.

(*Id.* at 208). In layman's terms, this refers to a hyperflexion shoulder sprain,[2] shoulder joint tear,[3] articular cartilage injury,[4] and joint pain and stiffness.[5] Dr. Robinson relates the majority of Plaintiff's injuries to the handcuffing by Defendant Thomas. (*Id.*). On October 11, 2018, Defendants' expert, Dr. Frank B. Sarlo, examined Plaintiff and concluded that any shoulder injury was not related to the handcuffing contact but was more likely related to the action of Plaintiff and her former husband struggling before the police arrived. (*Id.* at 222-23).

Plaintiff filed this action in Delaware Superior Court on September 12, 2016. (*Id.* at 235). On October 11, 2016, Defendants State of Delaware, Department of Safety and Homeland Security-Division of State Police ("DSP"), and Cpl. Mark Thomas removed the action to this Court. (D.I. 1). Plaintiff asserts excessive force in violation of 42 U.S.C. § 1983 (Count I) and battery (Count II) claims against Cpl. Thomas, as well as a *respondeat superior* claim against the State and DSP for Cpl. Thomas' actions as alleged in the battery count (Count III). The Complaint also claimed inadequate medical care of Plaintiff's various medical needs during her brief detention at BWCI. (*See* D.I. 81 at 239-245, ¶¶ 26-56). The medical needs claims (Counts IV and V) have been dismissed. (D.I. 23, 57). Defendants move for summary judgment on the § 1983 claim on the two bases that there is no evidence of excessive force, and, in any event, if I

---

[2] Henry Knipe and Ayush Goel, et al., *Anterior subluxation of the cervical spine*, RADIOPAEDIA (last viewed August 6, 2020), https://radiopaedia.org/articles/anterior-subluxation-of-the-cervical-spine?lang=us.
[3] *Shoulder Joint Tear (Glenoid Labrum Tear)*, ORTHOINFO (last viewed August 6, 2020), https://www.ucsfhealth.org/conditions/glenoid-labrum-tear.
[4] *Chondral Defects*, THE STEADMAN CLINIC (last viewed August 6, 2020), https://www.thesteadmanclinic.com/patient-education/knee/chondral-defects#:~:text=An%20articular%20cartilage%20injury%2C%20or,as%20the%20anterior%20cruciate%20ligament.
[5] *Athralgia*, JOHNS HOPKINS MEDICINE (last viewed August 6, 2020), https://www.hopkinsmedicine.org/health/conditions-and-diseases/arthralgia.

were to conclude there was, Defendant is entitled to qualified immunity. Defendants also argue that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law battery claim (Count II) or grant summary judgment on the battery claim if the Court decides to address it. (D.I. 80 at 13).

## II. LEGAL STANDARD

Summary judgment is only appropriate when the moving party demonstrates that there exists "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to show that there is a "genuine issue for trial." *Id.* at 324. To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250.

There is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

**III.     DISCUSSION**

    **A.  Excessive Force (Count I)**

A cause of action exists under § 1983 when a law enforcement officer uses force "so excessive" that it violates the Fourth and Fourteenth Amendments to the United States Constitution. *See Brown v. Borough of Chambersburg*, 903 F.2d 274, 277 (3d Cir. 1990). To maintain an excessive force claim, "a plaintiff must show that a seizure occurred and that it was unreasonable." *Estate of Smith v. Marasco*, 318 F.3d 497, 515 (3d Cir. 2003) (internal quotation marks omitted). Here, there is no dispute that Plaintiff's detention and arrest constitute a seizure, so I consider only whether the force Defendant used was unreasonable.

Plaintiff alleges that Defendant Thomas used excessive force during her arrest, in violation of her Fourth Amendment Rights. (D.I. 81 at 247, ¶¶ 60-63; D.I. 87 at 9). Claims that law enforcement officers have used excessive force are analyzed under the reasonableness standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 388 (1989). In deciding whether challenged conduct constitutes excessive force, a court must determine the objective reasonableness of the challenged conduct in light of the totality of the circumstances. *Couden v. Duffy*, 446 F.3d 483, 496-97 (3d Cir. 2006). Police officers are permitted to use a reasonable amount of force to effect an arrest; the degree of force is dictated by the facts and circumstances of each particular case. *Graham*, 490 U.S. at 396. The Supreme Court has cautioned, "The calculus of reasonableness must embody allowance for the fact that police officers are often

forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. The reasonableness of force used "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396.

The question to be answered is thus "whether the officers' actions [we]re 'objectively reasonable' in light of the specific facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.*

Plaintiff claims that Defendant Thomas "yanked" Plaintiff's arm and applied handcuffs too tightly, both of which violated Plaintiff's rights under the Fourth Amendment. (D.I. 81 at 247, ¶¶ 60-63; D.I. 87 at 10). Defendant Thomas argues that his conduct was objectively reasonable as a matter of law, considering the totality of the circumstances. (D.I. 80 at 8).

In *Kopec v. Tate*, the Third Circuit reversed the grant of summary judgment by the district court, but cautioned that its "opinion should not be overread as we do not intend to open the floodgates to a torrent of handcuff claims." 361 F.3d 772, 777 (3d Cir. 2004). The plaintiff in *Kopec* contended that he was in extreme pain, which would have been obvious to the arresting officer. *Id.* In addition to repeated complaints about the pain, the plaintiff allegedly fell to the ground and "began to faint." *Id.* Furthermore, the plaintiff alleged permanent nerve damage in one wrist, for which a surgeon treated him for over one year. *Id.* at 774.

In *Weiner v. Frost*, cited by Plaintiff, the defendant officer "yank[ed]" the plaintiff out of a police vehicle, injuring the plaintiff's shoulder. 2008 WL 11512016, at *1 (E.D. Pa. Dec. 10, 2008). The defendant officer tightened the handcuffs to the point that the plaintiff's hands went

numb and refused to loosen the cuffs when the plaintiff so requested. *Id.* The court in *Weiner* denied the officer's motion for summary judgment because the facts established a factual dispute about reasonableness, and, in addition, qualified immunity was not appropriate because the same disputed facts "may establish that [d]efendant violated a constitutional right and that right was clearly established." *Id.*

In the fifteen minutes of recorded audio and video of Plaintiff in the back of the police vehicle after her arrest, Plaintiff tells Defendant Thomas that she was going to sue him, asks why Defendant left her kids with her husband, asks how she might obtain her medication, and asks why the police officers believed her husband over her. (D.I. 81 at 1:00-10, 1:39-44; 2:03-06, 2:15-28). After about forty seconds of silence, Plaintiff asks whether she will have to wear the handcuffs at the police station or will they be taken off. (*Id.* at 3:09-20). She then explains that the handcuffs are too tight. (*Id.* at 3:30-40). After approximately six minutes, Plaintiff tries to find out where she is being transported. (*Id.* at 9:40-58). Plaintiff does not speak for the remainder of the recording. (*See id.* 9:58-15:32).

Unlike *Kopec*, where the plaintiff fell to the ground and fainted with pain, any other visible indicators of Plaintiff's pain were absent. *See Kopec*, 361 F.3d at 777. And while Plaintiff complained of the handcuffs being too tight, there is no evidence that the tightness was a particular problem, let alone that they were so tight that her hands went numb. *See Weiner*, 2008 WL 11512016, at *1. During that ride, Plaintiff exhibited no other obvious signs of discomfort or physical distress. *See* D.I. 83; *see also Gilles v. Davis*, 427 F.3d 197, 208 (3d Cir. 2005) (court noted that there were no visible indicators of pain for the plaintiff; videotape of the plaintiff did not show any expressions of signs of discomfort). Nor did Plaintiff seek or receive medical

8

treatment in connection with the tightness of the handcuffs after the fact. *See Gilles*, 427 F.3d at 208.

Courts sometimes deny summary judgment where the facts show, among other things, that a cooperative suspect informs the arresting officer of a pre-existing medical condition that is not otherwise obvious. *See Walton v. City of Southfield*, 995 F.2d 1331, 1341-42 (6th Cir. 1993) (affirming the denial of summary judgment where there were genuine issues of material fact about whether a plaintiff asked not to be handcuffed behind her back because of a shoulder injury). Summary judgment may also be inappropriate where an arresting officer has grabbed the wrist of an arm that is in a sling. *See Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998).

Here, the evidence does not show a disregard for preexisting injuries, complaints, or requests for medical treatment. Plaintiff said "ouch" (or something similar) when Defendant Thomas placed Plaintiff's right arm behind her back. (D.I. 81 at 238, ¶ 20). The evidence shows that Plaintiff had consumed alcohol, along with sleep medications Ambien and Klonopin, before the incident leading to her arrest. (*Id.* at 71-72; D.I. 87 at 3, 4). It would not be surprising if the alcohol and drugs had made Plaintiff slow to respond to Defendant's commands, but Plaintiff was cooperative; as Defendant Thomas acknowledged, she was "not calm but cooperative." (D.I. 81 at 280). In any event, Plaintiff stated that Defendant grabbed her right arm "a little hard." (*Id.* at 73). Police officers are permitted to use a reasonable amount of force to effect an arrest. *See Graham*, 490 U.S. at 396. Defendant Thomas argues that he followed standard police handcuffing policy and there is no dispute about that. (D.I. 80 at 10). Defendant's actions do not resemble the type of unreasonable, excessive force that has been found to violate a person's rights under the Fourth Amendment. Considering the totality of the circumstances, Defendant Thomas' conduct was objectively reasonable.

Dr. Robinson determined that most of Plaintiff's right shoulder injuries, including the hyperflexion sprain and shoulder joint tear, "appear[ed] to be a direct causal result" of her arrest. (D.I. 81 at 208). Dr. Sarlo opined that her injuries were the result of a prior incident. (*Id.* at 222-23). Of course, at this stage of the proceedings, I assume the correctness of Dr. Robinson's analysis. But the focus of the inquiry at step one is not on what injuries may have resulted from an officer's use of force, but rather on whether the actions of the officer were objectively reasonable, based on the circumstances. *See Graham*, 490 U.S. at 397. Plaintiff contends that she "indicated" to the nurse conducting medical intake at BWCI that her shoulder hurt. (D.I. 81 at 239, ¶ 29). Plaintiff's medical records, however, contain no such indication. (*Id.* at 109-55).

While an assessment of Plaintiff's injuries might be useful in understanding how much force was applied and in what manner, the reasonableness of force used "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396; *see also Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) (police officer's action of grabbing suspect's arm and twisting it during handcuffing was not excessive force, even if suspect later suffered a shoulder injury from preexisting injury; no evidence that police knew that a common handcuffing technique would cause injury to suspect). A genuine dispute for trial exists only where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 248, 252 (requiring more than the "mere existence of a scintilla of evidence"). The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Here, Plaintiff has not presented "sufficient evidence for a jury to return a verdict in [her] favor." *See Boyle v. Cty. of*

*Allegheny PA*, 139 F.3d 386, 393 (3d Cir. 1998). "If the evidence is merely colorable or not significantly probative, summary judgment should be granted." *Id.*

I find that a reasonable jury could not find that the force utilized by Defendant Thomas in arresting Plaintiff was unreasonable.  Therefore, summary judgment on the excessive force claim is warranted.

### B.  Qualified Immunity

"To resolve a claim of qualified immunity, [we] engage in a two-pronged inquiry: (1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was clearly established at the time of the official's conduct." *L.R. v. Sch. Dist. Of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016) (internal quotation marks omitted). We perform this inquiry "in the order we deem most appropriate for the particular case before us." *Santini v. Fuentes*, 795 F.3d 410, 418 (3d Cir. 2015) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

The doctrine of qualified immunity shields officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A clearly established right must be so clear that every "reasonable official would [have understood] that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). We do not charge officials with such an understanding unless existing precedent has "placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). And we examine an official's "particular conduct," *id.* at 742, in "the specific context of the case." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). In short, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). After a defendant properly raises qualified immunity in his or her defense at the

summary judgment stage, the burden is on the plaintiff to produce evidence sufficient to create a genuine issue of material fact as to whether the defendant engaged in conduct alleged to have violated a clearly established right. *Brown v. Grabowski*, 922 F.2d 1097, 111 (3d Cir. 1990).

The Third Circuit has recognized[6] as "crucial" to the qualified immunity analysis a "careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff)." *Grant v. City of Pittsburgh*, 98 F.3d 116 (3d Cir. 1996). The district court is also required "to specify those material facts that are and are not subject to genuine dispute and explain their materiality." *Forbes v. Twp. of Lower Merion*, 313 F.3d 144 (3d Cir. 2002).

In *Kopec*, the Third Circuit held that "the right of an arrestee to be free from the use of excessive force in the course of [her] handcuffing clearly was established," and "a reasonable officer would [know] that employing excessive force in the course of handcuffing would violate the Fourth Amendment." 361 F.3d at 778. Plaintiff cannot defeat Defendant's assertion of qualified immunity simply by showing that she was injured during the handcuffing (in accord with the opinion of Dr. Robinson). With respect to the handcuffing itself, Plaintiff describes Defendant as having "grabbed" her right arm "a little hard." (D.I. 81 at 73). This amount of force does not rise to the level of conduct that a reasonable officer would recognize as violating the Fourth Amendment. *See Harlow*, 457 U.S. at 818. Plaintiff does not dispute that Defendant Thomas followed standard police handcuffing policy. To find a clearly established constitutional violation based on Plaintiff's description of Defendant's use of force would make a nullity of the Third Circuit's caution against "open[ing] the floodgates to a torrent of handcuff claims." *Kopec*,

---

[6] The Court has recently reiterated the requirements of *Grant* and *Forbes*. *See Williams v. City of York, Pa.*, ___ F.3d ___, 2020 WL 4249437 at *1 (3d Cir. July 24, 2020).

361 F.3d at 777. In the case at hand, Plaintiff has failed to produce sufficient evidence to create a genuine issue of material fact as to whether the force utilized by Defendant Thomas violated a clearly established constitutional right. Accordingly, and, in the alternative, Defendants' motion for summary judgment on the basis of qualified immunity is granted.

### C. State Law Battery Claim (Count II)

Defendants request that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law battery claim (Count II). (D.I. 80 at 13). Plaintiff agrees. (D.I. 87 at 16).

A federal court should avoid needless adjudications of state law, both as a matter of comity and to promote justice between the parties. *Johnson v. Cullen*, 925 F. Supp. 244, 252 (D. Del. 1996). If the federal claims are dismissed prior to trial, the non-federal claims should likewise be dismissed. *See Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995); *Lewis v. J.C. Penney Co.*, 948 F. Supp. 367, 373 (D. Del. 1996).

I thus decline to exercise supplemental jurisdiction over Count II of the Complaint.

### D. *Respondeat Superior* Claim (Count III)

Plaintiff maintains derivative claims against the State and DSP Defendants under a *respondeat superior* theory for the state law tort of battery. The threshold requirement for a finding of liability under *respondeat superior* is that Defendant Thomas be found liable of the tort of battery. *Fields v. Synthetic Ropes, Inc.*, 215 A.2d 427, 432-33 (Del. 1965). Because I decline to exercise supplemental jurisdiction over Plaintiff's state law battery claim, I decline to exercise supplemental jurisdiction over Count III as well.

The caption on the Complaint lists suit as being brought against Defendant Thomas in his official capacity. (D.I. 81 at 235). There are no official capacity claims, however, alleged in the body of the Complaint. Thus, I do not think there has ever been an official capacity claim.

13

Further, Plaintiff agrees she is not asserting an official capacity claim. (D.I. 87 at 1 n.1). Plaintiff also agrees that she is not asserting *respondeat superior* liability against the State or the State Police on the basis of any constitutional claim. (*Id.* at n.2). Thus, I need not address Defendants' arguments on these topics.

## IV.    CONCLUSION

For the foregoing reasons, I will grant Defendants' motion for summary judgment and dismiss the supplemental state law claims in Counts II and III. An accompanying order will be entered.